Judge Cabell.
I concur in the opinion, that this appeal was improvidently granted, and ought to be dismissed.
Considering the case, therefore, as not being properly before us, I should have declined expressing any opinion on the merits. But, as the other judges think it may be useful to the parties to be informed of the views of the Court, I have no objection to declaring, as my present opinion, that the warrant, in the proceedings mentioned, was rendered illegal and void, as against all the persons *464 on whom it was served, in consequence of its having been executed, neither by a sworn officer, nor the person to whom it was directed by the magistrate, but by an individual selected by the prosecutor, who erased the name of the person appointed by the magistrate, and substituted that of the pers,<5||rselected by himself. But although the warrant, . thus nullified, could no longer be' relied upon as a justification, it might well be given in evidence in mitigatioñ of damages.
Had it not been for this objection to the execution of the’ warrant, I should have thought it; under the circumstances of this case, sufficiently certain, and, théfefore, legal, as against Wallas and Wells of Brooke county j .but void as to all those who were embraced by the term ,f‘ associates
Judge Brooke.
For the reasons that have been stated, I am of opinion the appeal ought to be dismissed; and I concur, also, in the idea, that the warrant on which the defendants founded their justification, is not, on the face of it, a general warrant, either within the meaning of the tenth section of the bill of rights, or at the common law, as settled in the case in 3 Burr. Money v. Leach. The plaintiff, under the circumstances of the case, was as well described as Was possible, for all that appears to the contrary: indeed, it is, inferrable, from the facts in the record, that, when brought before the magistrate, he would not give up his Christian name. He is described also as of Brooke county, to distinguish him from others, and to leave as little as possible to the discretion of the officer. The objection that the name of Jackson,. one of the persons authorized to execute the warrant, was stricken out, and the name of Black, one of the defendants, inserted, has more force; and my present impression is, that that cir-cumstance put an end to the authority of the warrant. In that view, it was certainly not a justification, buj: might have been given in evidence in mitigation of the damages, as it appears the defendants were ignorant of the alteration. *465 Nor am I of opinion that the word ‘ — associate"-fi in the warrant, is so general as to vitiate the whole of it, and to convert what otherwise was a special warrant into a general one : many cases may be supposed in which that expression, in addition to a more precise description of persons not included in it, would be considered as sufficient. Lord Mansfield, in the case referred to, threw out of it that part of the warrant which related to the signing of the papers, because it was unexecuted: on that ground, also, the word “ associates,” in th£ warrant, in the present case, is unimportant, as it is not pretended that the plaintiff was apprehended under that description,
Judge Roane.
This is an action of trespass, assault and battery, and false imprisonment, brought by William Wells against Hedgman Triplet, John Black, and nine others, for seizing and imprisoning him on the 3lst of January, 1801, and keeping him imprisoned for ten days then next ensuing, without cause, and committing other outrages upon him. In September term, 1802, a nolle prosequi was entered by the plaintiff, as to Triplet, (the magistrate who granted the warrant herein after mentioned,) and all the rest, except Black, having appeared by their counsel, the office judgment was set aside as to them, by consent of parties, and they pleaded not guilty, on which an issue was joined, with liberty to give in evidence, on the trial, a certain supposed warrant said to have been issued by Triplet, a justice, against-Wallas and — Wells, and their associates, and dated January 31st, 1801, together with the proceedings had under the same, subject to the opinion of the Court, whether the same, if specially pleaded, would amount to a justification, and liable to the same objections, both of law find evidence, as if they had been pleaded and demurred to, or were offered in evidence on the trial of the issue, 8cc. There was also another plea of son assault demesne. on which issue was also joined.
*466 The jury found, and only fourtd, that the defendants were not guilty ; on which, judgment was entered against plaintiff.
At :he trial, the plaintiff filed a bill of exceptions, which state(j on tjjC trjai 0f these issues, the plaintiff gave evidence of the imprisonment in the declaration mentioned ; to justify whi'h, the defendants gave in evidence the warrant herein after more particularly mentioned, and which is made a part of the bill of exceptions ; that the same came to the |iands of the defendant, John Black, under which he, with the other defendants, arrested the plaintiff, and brought him before Triplet, who, after examination, made the commitment, also more particularly mentioned, and made a part of the bill of exceptions, and gave testimony that Black was not a peace officer ; that the warrant, when issued by Triplet, was directed to the constable, or Major John Jackson, to execute, but that the name of John Jackson was stricken out by Colonel E. Jackson, who obtained the warrant, and that of Black inserted, before it was delivered to him ; and that the same was executed and returned by Black, It was further proved, by the defendants, that Colonel Edward Jackson mentioned this alteration to Triplet after the arn st, and that he had made it, and that Triplet said it would do as well; that no peace officer was present at the arrest • and that the plaintiff was not arrested in the commission of any breach of the peace. To this evidence the plaintiff objected, and prayed the Court to reject the same under the second* issue ; but the Court declared its opinion to be, that the evidence aforesaid constituted “ a justif cation of the arrest aforesaid, provided the defendants were unacquainted with the alteration afcresaid; and that the defendants were not obliged to know whether the same was formal, or to whom it had been originally directed, and that as to the same defendants the warrant was not void.’’
*467 under the influence of this opinion, and. instruction of the Court, a general verdict was found, on both issues, for the defendants.
Although it is readily admitted that an officer, acting tinder a regular and legal, warrant, in a matter of which the justice has jurisdiction, may justify the arrest of the person named therein, although such person be not guilty tif the offence alleged against him, it is a great aggravation of the offence of acting'under an illegal warrant, that the person arrested is, in fact, innocent.
In the case before us, it is not shown, on the part of the ag^gllees, that the plaintiff'waá not an innocent man ; it is. not shown that he had perpetrated or meditated the offence complained of. Admitting, for the present, that he was the person contemplated by the warrant, it is not shown,by legal evidence, in this action, that he had committed or meditated the act alleged against him. The contrary may, perhaps, in some degree, be inferred from itsbeincpadmited that he was not arrested in the commission of any breach of the peace. While the plaintiff rested on the general ground of his having been imprisoned, and of the general right of all our citizens to their liberty, the defendants, on the contrary, for any thing appearing in this action, did not mean to take the special ground that the plaintiff had committed or meditated the offence complained of. They rested upon the ground of acting in obedience to a warrant, which being, in their opinion, legal, made it quite unimportant to their defence, whether the'party arrested was, in fact, innocent or not. Certain it is, that the guilt of the plaintiff, in relation to the offence charged against him, is neither averred nor put in issue by the defendants. It is also certain* that the verdict of the jury is justified, without any • allegation to that effect having been, made or proved to them on the trial. It is iustified on the ground that (under the direction of the Court) the warrant was held to be legal, and, being so held, that the party executing it should be acquitted, although the party arrested were, *468 in fact, innocent. The guilt of the plaintiff by no ^tins follows as a necessary consequence of the v-rdict. T hat guilt is not only neither averred by the defendant,i nor found by the jury, but is also far from being proved by the testimony. There is no proof whatever to that effect,-Unless you admit the ex parte oath of Edward Jackson, on which the warrant was granted; (which is reprobated by all the rules of evidence as proof in this cause to establish the point in question ;) and, unless you also take for granted, that the very plaintiff now before the Court was the person against whom he complained, and to whom the justice’s warrant was intended to apply. In considering this case, therefore, we are to throw out of our view every idea that the' plaintiff is a guilty person j although even guilty persons are entitled to the benefit of the laws and constitution. We are to consider it as a' question which (through the appellant) may, in its consequences, affect all the good people of the commonwealth.
It is not for the purpose of establishing the principle, but for that of showing it more clearly, that I rel. on the innocence of the plaintiff, in the present instance. That is a circumstance entirely unimportant, when the warrant stands condemned by the force of great principles. It can never be the true understanding of those principles, that a general warranty is void where the party arrested is innocent, and valid if he be guilty. If such warrants are void, they are so under all circumstances, and as to all persons whatsoever. I repeat, however, that there is no evidence in this cause showing that the plaintiff had done or meditated the injury complained of. The oath of Edward Jackson, showing that the plaintiff was guilty, (which, also, is not introduced into the bill of exceptions,) was taken entirely in his absence, and without the possibility of his cross-examination ; and if it be said that his guilt is inferrable from his contumacy in not mentioning his name, or denying that the w.arrant *469 applied to him, when brought befóte the magistrate for commitment, I answer, that it was not necessary for him, at that stage, to have done any thing ; it was not incumbent on him to have pursued a course which would have released to the defendants his cause of action against them; or, at least, would have lessened’ his claim to damages. The innocence of the plaintiff is, however, wholly unimportant as aforesaid, it? the view I have taken of the subject, and I only mention it to show, á fortiori, the strength of those conclusions which would, nevertheless, equally follow if he wefe ever shown to have been guilty.
The warrant, in obedience to which the defendants acted, is liable to several objections ; as, 1st That it was erased and altered as aforesaid, after it was issued by the magistrate, and before it came to the hands of Black. 2dly. In authorizing the constable, or Black, to arrest the “ associates of-Wallas and- Wells/” and, 3dly. On account of the uncertainty of what Wallas and what Wells were contemplated in the warrant. I will briefly consider each of these objections in their order:
And, as to the first; it is held, that all imprisonment, without proper authority, is a false imprisonment, and the proper subject of an action.(a) The imprisonment, in question, has been made under colour of a warrant, which, ex vi termini, means only an authority, (b) As to an authority, it would seem, on general principles, that it could be executed only to the extent to which, and by the persons to whom, it was directed. Conforming to these general principles, it is held that the person having the authority must execute it himself, and cannot transfer it to another ; for it being a trust and confidence reposed in the party, cannot be assigned to a stranger whose ability and integrity were not so well thought of by him for whom the act was to be done.(c) The imperiousness of this rule is admitted by a case in the same book,(d) in which, where the king directed the deputy and council *470 of Ireland to appoint a bishop to be installed, and the deputy was changed, it was held that his successor and council might do it; it was so held, only on the ground that it was, in fact, the same grantee (the official d'epüty) who still continued, though the person was changed who filled the office. In this case, the exception, and the reason of that exception, proves the rule. It is also held,(a) that if a warrant be directed to a sheriff, he may make a warrant to his bailiff to execute it; but it is also held that a constable cannot substitute another in his room.(b) While this authority, in relation to the sheriff, establishes the doctrine contended for, on the principle that the exception proves the rule, that part which relates to the constable comes in aid of that construction ; and the argument, in relation to him, holds á fortiori as to a private person. Every argument going against the transfer of this power by the grantee himself, who may have some knowledge of the sentiments of the principal in this particular, holds á fortiori in relation to a stranger. If that grantee cannot judge of the ability and integrity of the person to be substituted, neither can a stranger, who is still less acquainted with the views and wishes of his principal. If neither Major John Jackson, nor even the constable, in the case before us, could judge in this behalf, and delegate to another the authority delegated, to them, still less could Colonel Edward Jackson, who is under the additional objection of being a party ; a patty who would abuse the discretion existing in the magistrate to appoint fit and proper agents, and substitute those who would oppress his enemy. In fact, he usurped the place of the magistrate in this particular, violated the principles of the common law, in relation to the nature of. an authority, and established a precedent'which,if sanctioned, would lead to the greatest oppression and injustice. This act deprived the plaintiff of the ,rhield provided for him by the constitution, in the discretion of upright magistrates ; a discretion not less important as to the person (when not a peace officer) who is to exe *471 ¿ute the warrant, t: an as to the substance of the warrant itself. This view of the subject is in exclusion of the circumstance that this transfer of power was made by means of an erasure. In Piggott's case.(a) it is held, that although a deed contains divers and distinct covenants, yet if any of the covenants -„re altered by erasure, or :n’ Ution, or interlineation, this c'- i ■; 7< whole deed ; for chat it is but one deed, then gh s tm tains distinct covenants. So, in this case, the warrant is but one warrant, even if we consider that the part which constitutes the person to whom it was directed was distinct from the body thereof. Every argument applying to the case of a common deed, in this pa. ticular, applies with tenfold force to a warrant, which is only an authority, and to that part of the warrant (designating the person by whom it is to be executed) which lays the liberties and persons of the people open to the greatest oppression and abuses.
It is essential to an authority that it should have the assent of the principal, at the time of exercising it.(b) This was not the case of the warrant before us, in relation to the material and important point of the person by whom it was to he executed. As to that person, B-ack was t: e agent and trustee of Edward Jackson, but not of the magistrate; the magistrate had not assented to his executing the warrant. In 1 Hale. 577., it is held, that a warrant granted with a blank, and sealed, and a ter wards filled up with tbe name of the party to be taken, is void in law. fo, in 1 Bac. 190., if is held, that an unlawful arrest, without a warrant, is nut justified by a warrant aferxvards taken out. The principle of jlhis doctrine is precisely in point to show, that the arrest in this case, being unlawful at the tinte, by reason of the erasure aforesaid, which avoided the warrant, was not made good by the subsequent consent of the magistrate. The act complained of is to be tested by the defendant's authority, as at the time it was committed, which was *472 not then justifiable. Then it was that the plaintiff's cause of action arose.
I readily admit that it would be hard to punish officers for acting under a warrant appearing to be regular, and with no knowledge that it had been altered. This, however, is a matter which must go in mitigation only, and can always be safely intrusted to a jury. While a contrary opinion would lead (to alarming consequences, it is bo hardship to impose it on officers, who are paid for their services, to know that the precepts that they execute are genuine. This is but one of the perils of which there are many analogous instances in the law. If it be an evil, it is better that it should be endured, than that the citizens should be liable to be harassed by the abuses of parties intervening between them and the magistrate, and depriving the citizen of that security which he de-v rives from being only amenable to the proper acts of the magistrate. It is better that officers should act at their peril, in the case in question, (by the scale of which peril, too, their emoluments were probably graduated,) than that the citizens should be deprived of this shield of protection afforded them by the laws. So, in relation to private persons, to whom warrants may be directed, it is held that they are not bound to execute them.(a) persor¡s are, therefore, mere volunteers in relation to the. service in question; and there is no hardship in holding them to the consequences of an office which they may either accept or decline.
On this ground alone, I. should think that the officers acted under a void authority, and that the arrest could not» consequently, be justified.
As to the Avar rant, considered in itself, it is to arrest --Wallas, of Brooke county,lawyer, and----Wells, of said county, yeoman, and their associates. It is liable to the objection, that Avhile the last part thereof, relative to the associates, is a general, as well as uncertain, the first part must also be considered as an uncertain, warrant.
*473 As to the part which relates to the associates, nothing can be more general. It is equally as general as a warrant against the publishers of a certain paper, or the murderers of a certain man. It is, indeed, more so; for, while it is general as to who may be those associates, it is also uncertain as to the persons of whom they are to be considered as the associates. It is, therefore, much more objectionable than a warrant to arrest the publishers of a paper, which paper, however, is certainly described. There is no description, in this part of the warrant, of any person, but only of the offence. In the case of Money v. Leach,(a) it was decided by Lord Mansfield, on a warrant to take up the publishers of a certain described paper, that it was not fit that the judging who were the publishers should be left to the officer, but it should be decided by the magistrate, who should give certain directions to the officer. That warrant would have been much more objectionable, if, in addition to the latitude given to the officer in deciding who was the publisher, a similar latitude had been given him (as in this case) as to the identity of the paper published. Lord Mansfield adds, that this doctrine is founded on reason and convenience; that Lord Hale, and all the others, had held such uncertain warrants to be void ; that there was no case in the hooks to the contrary ; and that the strength of the principles in the case was such, that the usage proved, from the revolution downwards, of similar warrants having issued 1’rom the department of state, could not overcome those principles, and legalize the warrant? and all the judges concurred with him, that the warrant was ILLEGAL AND VOID.
This authority is conclusive, beyond the possibility of doubt, as to the illegality of general warrants. It it conclusive, at least, as to so much of this warrant as relates to the associates of Wells and Wallas. The principle oí’ the 'decision is made a part of our constitution, by the tenth article of t,hc bill of rights. That article is in these words : 44 That general warrants, whereby an officer or *474 messenger maybe commanded to search suspected places, without evidence of a fact committed, or to seize any person or persons not named, or whose offence is not partlcularly described and supported by evidence, are grievous and oppressive, and ought not to be granted.” So, by the 6th article of the amendments to the constitution of the United States, it is provided, u That the right of the people to be secure, in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue but upon, probable cause, supported by oath or affirmation, and particularly describing the place to be searched, or the persons or things to be seized.”
These articles not only reprobate general warrants as being (if I may so express myself) more than void; as being grievous, oppressive, and unconstitutional, but also reprobate uncertain warrants, as being incompatible with the necessary security of the people. These founders of our liberty were not satisfied with reprobating such as were wholly and entirely uncertain, by being general ¿ they also reprobated all such as were within the'same mischief; all such as left the officer to judge, instead of the magistrate, who was the person intended to be thereby arrested. It would have been doing little, if they had only embraced extreme cases ; if they had established the principle, without extending it to embrace all' cases within the same mischief. They, however, have not been wanting on their part; and it only requires the co-operation of the judiciary to guaranty the safety of the people. /
Applying the tenth article of the bill of rights to the case before us, as relative to-Wallas and-Wells, it is a sine qua non of that article, that they should be named, or their identity be ascertained, by describing the, offence committed. That branch of the clause which requires the “ offence to be particularly described” does not, in terms, apply to this case, of a mere preventive remedy, in which no offence has been in fact committed. *475 ifs tbe reference, however, to a fact already committed, Í3 only for ascertaining the person meant in the warrant, the reason of the clause (cateris paribus) will equally apply, with the same view, to an offence meditated or intended. In both cases, it is only to ascertain the person, in defect of knowing his name, that this criterion is resorted to ; and it will be sufficient in all cases, in which it will certainly answer the purpose intended. On the same principle, the 6th article of the amendments to the constitution of the United States, admits it to be enough, that ihe person should be "particularly described.” The principle, and great desideratum, in all cases, and so declared to be by that article, is, that the people should be secure against unreasonable and oppressive seizures; and all the constructions on the subject should keep this end in view. Whatever name or description is so certain and unerring, as to leave no doubt who is the person intended, will attain this security ; and nothing short of it.
I presume that in a case deeply affecting the liberty and security of our citizens, one which attracted the attention of the founders of both governments in an especial manner, and involves a most summary and rigorous jurisdiction, we ought, at least, to require as much certainty as to the name or description of the person intended, as the Gommon law requires in the case of grants. This is certainly no great boon to ask in relation to a summary proceeding, affecting, the security of every citizen of the commonwealth. We should dishonour the principles of our forefathers, if we were to allow a greater latitude in the former case than in the latter.
Taking that for the criterion, then, which is conceding ¿a good deal — for we are told (6 Co. Rep. 65. Sir Moyle Finch's Case) that greater certainty is required even in writs than in deeds — let us examine the present question.
It is said, in Doctor Ayray's Case, (11 Co. Rep. 20.,) that “ nomen est quasi rei notamenthat “ nomina sunt notes rerum that names were invented to make a distinction between person and person, and that if the per *476 son be so described that he may be certainly known from other persons, the misprision or omission of the name of baptism does not avoid the grant. As, if it be, omnibus Jlliis I. A, ox primogénito filio I. S., or uxori de I. S., or filia I. S., when there is but one : in all those cases the grant is good; for the grantee is ascertained beyond a possibility of mistake. So it is said that, whereas the name of the' abbot of W. was Richerus, and he, by the name of Richardus, abbot oe W., made a grant, the grant was held good, though the Christian name was mistaken; because his addition of Abbot of W. described the person beyond a doubt; there being but one Abbot,of W. So it is held, that if I grant to I. S. and Margar eta uxori suo, when her name is Margeria, yet the grant is good, because the terms uxori suo make the description of the person certain. So it is held, in 6 Co. Rep. 65., (Sir Moyle Finch's Case,) that a grant made to a bastard, by the name of him who begot him, is good, if he be known by such name; and so is a grant to Richardo filio Richardi Marwood, though a bastard, if he be known by that name. In these cases, also, these last-mentioned facts, being universally known, ascertain the identity of the person intended, beyond the possibility of doubt.
I cannot find that, even in the case of grants, any thing short of this has been admitted by the principles of the common law. Certainty only is the object; and whatever will attain’it, and nothing less, will suffice.
In the warrant before us, the only description given, of the Wells intended, is, that of ‘‘ — Wells, of the county of Brooke, yeoman.” It is not shown, in and by ike rvarrant, as a further description, that he was then tarrying in the county of Plarrison; much less that he was at any particular place in that county. • And even if it be inferred that the Wells intended was in the county of Harrison at the time, from the circumstance that he was brought before the magistrate on the day of the date of the warrant, it may be answered, 1st. That this appears only by matter dehors the warrant; id est, by the *477 mittimus; whereas the warrant should contain sufficient certainty in itself; and, 2dly. That it is not a remote probability (as is shown to have been the fact in this case) that there might be two or more yeomen, of the same surname and county, abiding in an adjacent county at the same time. As to any aid to be derived to the warrant, from the complaint on which the warrant is grounded, while that is no part of the evidence in this cause, it is liable to, the^rsi objection just made to the mittimus: but, if this were otherwise, that complaint contains nothing particular and specific; nothing which is not common to all instruments of the kind, except the names of the parties as aforesaid. The warrant, then, contains nothing in it (if I may so express myself) to locate it upon any Wells in particular. It contains no indicia in itself, leading to even a reasonable degree of certainty, as to the parties intended. The warrant, in itself, must steer clear of the objection of being a general or uncertain warrant. On its own face, it must stand the test of scrutiny: it cannot be helped by proofs, or matters aliunde. It is not so probable, as to amount to any thing like a certainty, that there is only one yeoman of the name of Wells in the county of Brooke. I have known many yeomen of the same name, of the same county, and even being together in another county at the same time; to any of whom a description like the present would equally apply.
This warrant, then, at most, is like a grant to one of the daughters of /. S., without distinguishing which ; and which is (as before said' clearly void, for the uncertainty, in the case of a grant. It does not come within the principles of any of the before-menijoned cases, in which, although the name was defective, or omitted, the person was certainly identified, by additions or descriptions, leaving no possible doubt who was the person intended. In respect of any thing leading to perfect certainty, the warrant before us is entirely defective ; there is nothing hi it competent to “ distinguish between person and person,” or to describe the person so as that he may be *478 certainly known,” to use the language of the judges in Doctor Ayray's Case. There is nothing to prevent the officer from oppressing any man at his own mere pleasure, as being an associate of Wells and Wallas ,• or any man of the surname of Wells, to whom the description of his occupation and county would apply.
But it is said, that if the name were entirely set out, yet some degree of uncertainty would exist, as there might be two or more of the same Christian and surname. While this is admitted, it is nevertheless true, that the probability thereof is remote ; and that, in such case, the magistrate has done all in his power to ascertain the person.
Again, it is said, that this latitude ought to be allowed, in respect of the urgency of the transaction, the suddenness of the case, and the ignorance of the party of the names of strangers. To this I answer, that he should be then more particular in his description of the offence or circumstances, so as to put the matter beyond a doubt. I answer, also, that, while all this is admitted, and these circumstances would be highly proper to go in mitigation of damages, the principle would equally go to justify cases in which no such urgency or mitigating circumstances existed. There can be but one principle in this respect, as applicable to all warrants, under whatever circumstances. There is but one bqundary line, between circumstances going to justify, and to mitigate, in the case before us.
On this ground of ignorance and urgency, while I forbear to go into the cases ,in which a person, without a warrant, may arrest those attempting or perpetrating a crime, it does not authorize a departure from the requisite certainty, where a warrant-is actually granted. In 1 Hale, 587., after laying it down, as a general principle, that a justice cannot grant a warrant to apprehend “ all persons suspected,” but must name their names, it is said that an exception has been made thereto, in favour of the Court of king's bench, who, in the case of a riot by persons unknown and disguised by,visors, made an *479 order on the sheriff to bring them into Court, to be examined touching the same: but the author adds, that that which was permitted to be done by the highest Court of justice, should not be a pattern for justices, or inferior jurisdictions. This^ exception from the general rule, in this case, is a complete answer to the plea of urgency, as relative to the jurisdiction of justices of the peace.
It is admitted that an officer caflnot justify under a warrant for an offence, whereof the justice has no jurisdiction, or which is committed out of his jurisdiction; though he may under an erroneous warrant, in cases in which the magistrate has jurisdiction.(a) The reason of this distinction is given in 10 Co. Rep. 76., (Case of Marshalsea,) and is, that, in the former case, the whole is coram non judice, and the officer is not bound to obey him who is not a judge ; that is, a judge for the purpose expressed in the warrant. This principle entirely applies in the, case before us. No man is a judge for the purpose of granting a general warrant. This which was decided, on common law principles, in the case of Money v. Leach, is rendered more clear by the express provisions of the bill of rights. Such a warrant, on the principles of the English law,(b) is held to be void, and no -warrant ; and a. fortiori in this country; and no man can justify arresting another on the authority of such a blank piece of paper.
This requisite degree of certainty in all warrants, is not only necessary for the security of the citizens, against the mistakes, oppression, or misjudgment of subordinate officers, but is also necessary in behalf of those officers themselves. They are justified if they act in obedience to the warrant, where the magistrate has competent jurisdiction ; that is, where they take dp the person against Whom the warrant issued : but how can they know who this person is, if the magistrate has given them no certain indicium to go by,? This, indeed, is a minor ground; but it is equally necessary for the safety of the *480 officer; and (which proves it to be no warrant) without a sufficient degree of certainty, he is not bound to execute it.
It is, I believe, conceded on ¿11 hands, that this warrant, so far as it related to the associates of-Wells and — Wallas, was a general warrant, and unconstitutional and void; but it is doubted whether it is not good as to the other part, under which the present defendants are supposed to have acted, which relates to Wells and Wallas themselves, and which is by some supposed to be sufficiently certain. Being entirely of opinion that this last part is also uncertain and void, it is not necessary for me to solve this doubt. There is no part of this warrant which is not equally liable to objection. It is not necessary for me to say, whether the interdiction, in the constitution, of general or uncertain warrants, will not, equally with an erasure, nullify the warrant in toto: or, whether the officer, resting upon theN sound part of the warranty can justify himself, in a case in which the warrant itself is reprobated by great principles, and which he might, consequently, have refused to execute. I leave these questions open for future decision.
But those gentlemen who hold that part of the warrant to be general and void, which relates to the associates, would do well to recollect that it is far from being shown, in this case, that the plaintiff was not arrested under it. It is not only very probable that there might be a —i— Wells, an associate, as well as-Wells, a principal, but this is shown to have been the fact, in this case, by the mittimus. That ¡mittimus shows that a —--— Wells was arrested as a principal, and a - Wells (together- with Gappin) was arrested as an associate; both of the county of Brooke; and it is not shown that the former is the present appellant, and not the latter. For any thing appearing in this case, the very person arrested as an associate, and under that part of the warrant which is, on all hands, admitted to be void, may be the present appellant. My private opinion and belief is, *481 indeed, otherwise; but that is no sufficient foundation whereon this Court can take the fact for granted.
On these grounds, I am of opinion, that the warrant in question is illegal- and void, upon the principles of the common law ; on those great principles which are essential to the security of all living under a government of laws, and enjoying the blessings of freedom ; principles, without which, freedom, or security from oppression, would be but an empty name. I am of opinion that it is 'unconstitutional. as well as illegal and void, by the very letter, as well as spirit, of our constitutions. It is illegal, unconstitutional, and void because it leaves to the discretion and judgment of the officer, not only to say who the associates of--Wallas and-Wells are, but also to say of which Wadas and Wells the said associates were intended. I; is illegal, unconstitutional, and void, in relation to ----Wal'as and-Wells,themselves, because it' neit .er mentions their Christian names, nor supplies any satisfactory data, from which their identity can be certainly inferred.
I am, also, of opinion, that this warrant, if originally good, was rendered null and void, by the erasure and interlineation, as to the name of the person by whom it was to be executed ; that, without reference to the consequences of such a measure, it became thereby no %varrantf at the time it was executed; and that the person who executed it acted without the authority of the magistrate.
On all these grounds, I am of opinion, that the instruction of the district Court, that this warrant amounted to a justification of the defendant executing it, was clearly and palpably erroneous; and that the judgment rendered under the influence thereof, ought not to stand. I should, therefore, be for reversing the judgment, and awarding a new trial, on which no such instruction should be given; but for the necessity (as it, for the present, appears to the Court) of sending the cause back, because the appeal was prematurely prayed, the cause not having been then determined as to all the defendants.
*482 Appeal dismissed, as having been improvident!}’ granted.
Judge Fleming.
I consider this a very important case^ as liberty^ quiet, and safety of all our citizens may be eventually affected by the decision.
It appears to me, that the appellant, and others, mentioned in the record, were arrested, and imprisoned, under a warrant illegal in itself, and executed by a person not legally appointed for that purpose ; and to deprive a citizen of his liberty, under colour of law, is oppression and tyranny in the extreme.
By our Bill of Rights, article 10th, it is declared, that general warrants whereby an officer, or messenger, maybe commanded to search suspected places, without evidence of. a fact committed, or to seize any person, or persons, not named, or whose offence is not particularly described, and supported by evidence, are grievous and oppressive, and ought not to be g. anted.
The warrant now under consideration appears, clearly, to me, to be of that description ; ‘‘ commanding the constable, or Major John Jackson, to arrest, and bring before the justice who issued the same,- Wallas, of Brooke county, lawyer, and-Wells, of said county, yeoman, and their associates,” (not named therein.) The name of John Jackson, one of' the persons to whom this extraordinary warrant was directed to be executed, was erased, and the name of 7ohn Black (perhaps one of the prosecutor’s dependants and associates, for it seems to have been a party business) was substituted in his place, by the prosecutor himself, without any authority tor so doing.
In the famous case of Money et al. v. Leach, in the Court of king’s bench, reported in 3 Burr. 1742., the whole Court were of opinion that the warrant, under which the defendant in error was arrested, was illegal and void, on two grounds ; first, that Lord Halifax, then secretary of state, who issued the warrant, was not com *483 oetent to do ;,o: arid, secondly, foi Its uncertainty; it having requited the apprehending and seizing the au~ Ihors, printers, and publishers, of (what was called) a seditious libel, contained in a paper, styled The North Briton, No. 45, without naming any person whatever as author, printer, or publisher, of the said paper.
Although, in England, the penal laws lean much towards prerogative, and the liberty of die press is not held so sacred as it is, and ought to be, with us, it is laid down by Blackstone, in his Commentaries, “ that a justice of the peace hath power to issue a warrant to apprehend a person accused of felony', though not yet indicted ; and he may also issue a warrant to apprehend a person suspected of felony, though the original suspicion be not in himself, but in the party that prays the warrant; because he is a competent judge of the probability offered to him of such suspicion. But, in both cases, it is fitting to examine, upon oath, the party requiring a warrant, as well to ascertain that there is a felony, or other crime, actually committed, without which no warrant should be granted, as, also, to prove the cause of probability of suspecting the party against whom the warrant is prayed.” 2 Bl. Com. 290., and 2 Hale’s History of the Pleas of the Crown, 580., cited.
In the case before us, it was not stated that a felony, breach of the peace, or other crime, had been committed; but that Edward Jackson made oath that he was afraid that---Wallas, of Brooke county, lawyer, and-- Wells, of said county, yeoman, and their associates, would beat him, &x. Under this extraordinary, defective, and illegal warrant, -Wallas, William Wells, Stephen Gappin, and-Wells, were arrested, and committed to jail, the, two.latter said «'1 suppose by the prosecutor; to be associates of- Wallas and -- Wells; and, although they are r.ot before this Court, for reasons that do not appear, yet the proceedings serve tq show the evil com* sequences that might result to the community at large, or {o a.great portion of our citizens, should they be san Co. tiemed, or countenanced by this Court*
*484 X am clearly of opinion, upon the whole, that the warrant under consideration is illegal in its o igin, and was ^legally executed ; and that the instruction given to the julT ^y the Court below, was erroneous. But it appears, by the record, that there was a writ of inquiry against the defendant, Black, which seems not to have been acted upon; the judgment was, therefore, incomplete, and the appeal improvidently granted, and must, consequently, be dismissed.

 So in the exception, but should it not be first issue ?

 Buller's N. P. p. 22.

 Ibid. p. 83.

 1 Bac. Abr. 320.

 Ibid. 319.

 1 Hale, 581.

 Ibid.

 11 Co. Rep. 28.

 1 Bac. 314.

 1 Hale, 581. 2 Hale, 110.

 3 Burr. 1742.

 2 Hawk 81.

 4 Bl. Com. 290.